UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH VERRIER,

                              Plaintiff,

         v.                                              Case No. 21-cv-428-pp

DR. MURPHY, *et al.*,

                              Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Joseph Verrier, who is representing himself, was confined at the Oshkosh Correctional Institution when he filed this civil rights complaint.[1] On July 13, 2021, the court reviewed the plaintiff's complaint, which contains the same allegations that he made in another case (Case No. 19-cv-1812), along with new, more recent allegations. Dkt. No. 10. Based on the plaintiff's assertion that he had not fully exhausted his administrative remedies for some of the allegations in Case No. 19-cv-1812, the court gave him an opportunity to voluntarily dismiss that case without prejudice, telling him that if he did so, the court would conduct a substantive screening of the complaint in this case. Dkt. No. 10 at 7. The plaintiff subsequently filed a motion to voluntarily dismiss Case No. 19-cv-1812; on August 3, 2021, the court granted that

_____

[1] On August 23, 2021, the court received a notice of change of address from the plaintiff stating that as of August 24, 2021 he will have no established address, but that mail can be received at an address in Florida that he provided. Dkt. No. 11.

1

motion and dismissed the case without prejudice.[2] This order screens the complaint in this case, which contains all of the plaintiff's allegations.

## I. Screening the Complaint

### A. Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

---

[2] The plaintiff's motion for voluntary dismissal included a request to transfer the pending motions in 19-cv-1812 to this case. The court denied that request.

B.    The Plaintiff's Allegations

The plaintiff has sued twenty-five defendants. Dkt. No. 1 at 1. He alleges that he has long term pre-existing conditions of ulcerative colitis, a partial right knee replacement with arthritis in his right and left knees, and multiple broken/bulging lower discs in his spine. Id. at 3. These conditions allegedly cause him a number of problems, including difficulty and pain when using the stairs and difficulty controlling bowel movements. Id. The conditions also allegedly cause shooting pain in the back of the plaintiff's legs, chronic pain, sleep difficulties due to intense pain, inability to kneel due to an implant in the right knee, anxiety, depression and "PTSD." Id.

The plaintiff alleges generally that staff at Oshkosh Correctional Institution refused to give him a "low tier restriction" despite a March 6, 2012 note from defendant Dr. Murphy in the plaintiff's medical records stating that the plaintiff needed a low tier restriction indefinitely to avoid falls and a July 17, 2018 order from Dr. Hoftiezer (not a defendant) that the plaintiff have a low tier restriction for 365 days due to his knee replacement. Id. at 3-4. The plaintiff's complaint lays out a timeline, beginning in September 2019, of correspondence, inmate complaints and medical appointments in which his requests for a low tier restriction were denied. During this time, the plaintiff allegedly nearly fell on the stairs multiple times, fell on the stairs twice causing injury, experienced intense pain because of using the stairs to get to and from his upper tier cell and soiled himself because he could not get to the bathroom in time because he had to use the stairs to get to the bathroom. The plaintiff requested a low tier restriction from both the medical staff who examined him and from non-medical staff who he informed of and/or who witnessed his struggles. For the most part, both the medical and non-medical staff members

3

said they could not help the plaintiff with his low tier restriction request because the "Special Needs Committee" had denied his request for a low tier restriction.

Specifically, the plaintiff alleges that on September 13, 2019, he informed medical staff in writing that Dr. Murphy had previously ordered a permanent low tier restriction and that the physician at Dodge Correctional Institution had also ordered such a restriction. Id. at 4. A nurse allegedly advised the plaintiff to file an institutional complaint. Id.

The plaintiff says that on September 11 and October 29, 2019, the Special Needs Committee denied his request for a low tier restriction. Id. The Special Needs Committee is composed of defendants Dr. Murphy, Dr. Wheatley, NP Hermes, HSU Manager Fofana, Dr. Tannan, NP Bowens, and RN Halverson. Id. Each member of the Special Needs Committee allegedly knew the plaintiff had an ongoing condition that placed him at risk of falling. Id.

The plaintiff alleges that on September 14, 2019, he filed an inmate complaint pointing out that two Wisconsin Department of Corrections (DOC) doctors previously had ordered low tier restrictions for him due to bad knees. Id. He allegedly filed inmate complaints on multiple occasions that put defendants T. Gillingham and R. Bubolz on notice that medical staff was mistreating him; they turned a blind eye. Id.

On September 16, 2019, defendant HSU Manager Fofana allegedly reviewed the plaintiff's medical file and determined that there was no need to accommodate his low tier request. Id. at 5.

The plaintiff alleges that on October 18, 2019, he notified medical staff that he had been moved to an "upper tier upper bunk," that he had already nearly fallen on the stairs and that he could not kneel on the disk in his knee,

4

a requirement for climbing into an upper bunk. Id. The next day, defendant Nurse Michelle Lewis allegedly evaluated the plaintiff and performed a limited physical exam. Id. The plaintiff states that when he asked Nurse Lewis why she did not evaluate the pain in his lower back, she responded that that was not part of the evaluation or assessment. Id.

That same day (October 19, 2019), the plaintiff alleges that he notified defendant Sgt. Roberts, who had the authority to move incarcerated persons, of his condition, including his bad right knee. Id. Sgt. Roberts allegedly said that the plaintiff appeared healthy and that Roberts himself had broken his back from a fall and felt no need to accommodate the plaintiff. Id. In response to the plaintiff's explanation that he also was having issues getting to the restroom, Sgt. Roberts also allegedly said that incarcerated persons previously had soiled themselves to attempt to gain benefits and that he would not accommodate the plaintiff unless medical staff and the computer directed him to do so. Id.

The plaintiff alleges that also on October 19, 2019, defendant Nurse Anderson evaluated him for a low tier. Id. The plaintiff states that Nurse Anderson's special needs evaluation (DOC form 3332) stated that it was difficult for the plaintiff to access the restroom from the upper tier, that he could "not effectively very difficult" climb stairs, that he had a partial right knee replacement, frequent falls and that he reported falling up the stairs. Id. at 5-6. According to the plaintiff, Nurse Anderson's report failed to mention that he had difficulty making it to the bathroom, his pain and that Dr. Murphy and Dr. Hoftiezer previously had ordered that he have a low tier restriction due to knee issues. Id. The plaintiff states that Nurse Anderson could have provided the plaintiff a low bunk low tier restriction but failed to do so. Id. at 6.

The plaintiff alleges that on October 25, 2019, defendant Sgt. Sparks witnessed the plaintiff's leg collapse under him and commented that he should be on a lower tier. Id. at 7. Sgt. Sparks allegedly had the ability to place the plaintiff in a low tier housing unit. Id.

On October 28, 2019, the plaintiff allegedly informed Sgt. Kramer that he had been moved to an upper tier despite Dr. Murphy's previous order of a lower tier due to his bad right knee and risk of falling. Id. The plaintiff states that he did not receive a response from Sgt. Kramer. Id.

The plaintiff alleges that on October 29, 2019, defendants Dr. Wheatley, NP Hermes, Dr. Tannan, NP Bowens, RN Halverson, Dr. Murphy, Fofana and Foster reviewed his medical file "thus becoming aware and refusing to act by determining he did not warrant a low tier housing unit . . . [e]ven though his medical disability specifically is covered in their policy[.]" Id.

On October 30, 2019, the plaintiff allegedly reported to HSU that, "again I soiled myself due to difficulties going down stairs due to intense lower back pain into the legs and in the knee." Id. He states that the next day, defendant Nurse Michael Milner indicated that due to the plaintiff's ulcerative colitis there was nothing he could do for the pain, and that the low tier issue was out of his hands. Id. at 7-8.

The plaintiff alleges that he filed another inmate complaint on October 31, 2019, raising the issue of pain and difficulty using the stairs after having been moved to an upper tier. Id. at 8. He says that staff rejected his inmate complaint without consulting medical staff and that defendants Bubolz, Doehling and Greenwood failed to act after being made aware of a severe risk to the plaintiff. Id.

6

On November 17, 2019, the plaintiff allegedly was unable to get to the restroom before his bowels released due to difficulty descending the stairs. Id. He also experienced pain while descending the stairs. Id.

The plaintiff alleges that on November 22, 2019,[3] his right knee gave out while he was going down the stairs and he fell down the stairs hitting his head, elbow and hip. Id. Defendant Sgt. Roberts allegedly witnessed the fall; after the fall, the plaintiff was taken to health services in a wheelchair. Id. While there, defendants Nurse Christopher Swartout and Nurse Unknown provided him with an ice pack and acetaminophen, and said that Dr. Murphy would be informed of the incident. Id. at 8-9. The plaintiff alleges that he explained his health history to the nurses, including his knee and back issues. Id. at 8. The plaintiff states that, based on his symptoms after the fall, he thinks he suffered a concussion. Id. at 9. According to the plaintiff, he asked to be provided a lower tier housing to avoid the risk of falling more. Id. He states that defendants Nurse Swartout and Nurse Unknown had the ability to restrict him to low tier housing, but they failed to do so. Id. He alleges that he was returned to his unit on the upper tier. Id. The plaintiff alleges that defendant Sgt. Roberts failed to file an incident report about the fall. Id.

The plaintiff alleges that on November 23, 2019, he woke up with bruising and soreness from his fall. Id. He says that he wrote to Sgt. Kramer and informed him of the fall, that his knee had collapsed, that he should not be on an upper tier and that Dr. Murphy had previously indicated he needed a low tier. Id. at 10. The plaintiff states that he did not receive a response, and that

---

[3] The plaintiff did not provide the date of this fall until a few pages after he described it; the date appears in paragraph 62 on page 10 of the complaint.

7

same day, he wrote to defendant Unit Manager Sable regarding the situation. Id.

The plaintiff alleges that on December 1, 2019, he wrote to health services complaining of pain and difficulty bending since his fall. Id. The next day, defendant Nurse J. Feltz evaluated him and informed him that he was scheduled to be seen by Dr. Murphy. Id. She allegedly noted that the plaintiff was "walking slowly while holding left side of lower back and grimacing," that he had "limited ROM on back and right knee," and that he feared falling again. Id. The plaintiff states that Nurse Feltz did not place him on a low tier though she had the ability to do so. Id. The plaintiff alleges that next day, he met with defendant Unit Manager Sable in her office and informed her of his existing disability and that he was still located on the upper tier. Id. Defendant Sable allegedly looked in her computer and confirmed that the plaintiff previously had a low tier restriction but that it was no longer in effect, and she did not relocate him to a lower tier. Id.

The plaintiff alleges that on December 2, 2019, he wrote defendant S. Felts and the security director, stating: "Per my fall down the P unit west side stairs on 11/22/2019 please store as evidence video monitors on 11/13/2019, 11/18/2019, 11/22/2019, 12/2/2019 of that staircase" and that litigation was pending. Id. He states that Sarah Felts destroyed and/or failed to preserve the video evidence of the incident. Id.

The plaintiff alleges that on December 6, 2019, Sgt. Sparks informed him that he had observed the plaintiff's difficulties and that he had emailed Sgt. Kramer about the issue. Id. at 11. Sgt. Kramer allegedly took no action. Id.

On December 7, 2019, the plaintiff allegedly fell going down the stairs and injured himself, and he was taken to the HSU in a wheelchair. Id. Nurse

Ostrander (not a defendant) evaluated him and wrote a fourteen-day order for him to have a low tier restriction due to two falls. Id. The plaintiff says that she said he would be seen by Dr. Murphy before the order expired. Id.

The plaintiff alleges that on December 11, 2019, he submitted a Health Service Request stating that since his fall he had a large, painful welt on his left shoulder and intense low back pain with difficulty standing erect or sitting for any duration of time. Id. On December 14, 2019, HSU Manager Foster allegedly determined that there was no medical necessity to place the plaintiff on a low tier. Id.

On March 3, 2020 (about three and a half months after the fall), defendant Dr. Murphy allegedly examined the plaintiff. Id. The plaintiff states that Dr. Murphy noted the two falls and the back pain, and he prescribed six sessions of physical therapy and pain medication. Id. at 11-12. According to the plaintiff, Dr. Murphy did not write an order for a low tier restriction; instead, Murphy informed the plaintiff that he could again appeal to the Special Needs Committee and that an artificial knee and arthritis did not qualify for a low tier placement. Id. at 12.

The plaintiff alleges that on April 7, 2020, he arranged to discuss his concerns with the unit social worker regarding his roommate's contraband items held in his room and the social worker said she would inform security staff. Id. On April 8, 2020, defendant Sgt. Roberts allegedly told the plaintiff's roommate that "someone very close to you has snitched on you, I hate snitches." Id. The plaintiff states that he believes that this was Sgt. Roberts' attempt to retaliate against him for filing his inmate complaint on December 4, 2019 and for filing this case, and to intimidate him from pursuing legal action against Roberts. Id.

The plaintiff alleges that defendants Fofana, Foster and Sable failed to adequately supervise their staff with regard to protecting the plaintiff's constitutional right to safety. Id.

The plaintiff alleges that in April 2020, his physical therapist documented that he demonstrated "significant tension from sciatic nerve and also from dural sheeth." Id. at 13. The plaintiff states that on April 29, 2020, he submitted a health service request stating: "Last week 4/22 I was using the only avail toilet – handicap with an emergency situation ulcerative colitis SGT ROBERTS said I could not use – I soiled myself. I also had a few close calls. After my fall I seem to be having more issues." Id. The plaintiff states that his physical therapy ended on May 20, 2020 and he asked to continue to attempt the exercise the therapist gave him in his room. Id. In May and July 2020, the plaintiff submitted health service requests regarding ongoing leg and back pain. Id. at 13-14.

The plaintiff alleges that in October and December 2020, he submitted health service requests regarding his ongoing pain. Id. at 14. He says that a nurse saw him on October 9, 2020 and said that Dr. Murphy would be notified. Id. The plaintiff also says that on December 10, 2010, defendant Nurse Lewis evaluated him for a wheelchair but that she did not provide temporary access to a wheelchair for long distances. Id. On December 12, 2010, the plaintiff submitted a request stating that the pain in his back and left leg continued to intensify. Id. He states that two weeks later, he wrote to defendant Sable that the Special Needs Committee had denied him using a wheelchair "for pain and slowness of access to library – they granted 5 extra minutes of painful walking, but library does not call in advance so pretty useless." Id. at 15.

10

The plaintiff alleges that on December 28, 2020, he filed an inmate complaint about the denial of use of a wheelchair, identifying Murphy, Sable and Sgt. Sparks and putting the inmate complaint examiners on notice "of the neglect taking place." Id. Defendants Spranger and Doehling allegedly knew about the plaintiff's condition but took no action to correct it. Id.

The plaintiff alleges that on February 3, 2021, he submitted a health service request stating that he fell the previous week when his right knee gave out. Id. He allegedly told his physical therapist, and he states that walking long distances is very painful and difficult. Id. The plaintiff alleges that on February 12, 2021, he submitted a health services request stating that his knee collapsed, and he almost fell. Id.

The plaintiff states that the following activities have been impacted by staff not providing him with a low tier restriction, which means he has to use the stairs: getting clean clothing, medicine and water, making phone calls, going to the bathroom, health services and the library, getting/sending mail, eating, brushing his teeth, going outside, getting haircuts and doing laundry. Id. at 15-16.

The plaintiff claims that defendants Roberts, Kramer, Murphy, Sable, Fofana, Foster, Lewis, Milner, Anderson, Feltz, Wheatley, Hermes, Tannan, Bowens and Halverson acted with deliberate indifference because they knew of a significant risk to the plaintiff but failed to authorize a low tier restriction. Id. at 2. He claims that defendants Gillingham, Doehling, Spranger and Bubolz, as complaint examiners, knew of the plaintiff's risks as well as staff members' inaction to mitigate those risks, yet they took no action and did not rely on the advice of medical personnel in making their determinations. Id. The plaintiff claims that defendants Sable, Fofana and Foster, as supervisors of the health

11

services staff and of the correctional sergeants, had firsthand knowledge of the situation and failed to take corrective action. Id. The plaintiff claims that defendant Felts violated the plaintiff's due process rights by failing to preserve video evidence relating to litigation and by knowingly destroying culpable evidence. Id. at 2-3. The plaintiff sues the supervisor defendants Sable, Fofana and Foster as well as members of the special needs committee Wheatley, Hermes, Tannan, Bowens and Halverson in their official capacities because he says there appears to be an unwritten policy of denying a person with an obvious disability the proper accommodations, in violation of the Americans with Disabilities Act and the Rehabilitation Act. Id. at 3. Finally, the plaintiff claims that defendant Roberts intentionally placed him in danger and attempted to retaliate against him for filing Case No. 19-cv-1812. Id.

C.   Analysis

As an initial matter, the court notes that the plaintiff has listed M. Greenwood as a defendant, but the complaint does not contain any allegations against Greenwood. The court will dismiss Greenwod.

1.   *Eighth Amendment Claims*

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment where he is deliberately indifferent "to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" Roe v.

12

Elyea, 631 F.3d 843 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).

A plaintiff must allege "that an official actually knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiff also "must show more than mere evidence of malpractice." Id. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 F. Appx. 591, 593 (7th Cir. 2015) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)).

The plaintiff's alleged ulcerative colitis, knee and back injuries and severe pain are serious medical needs under the Eighth Amendment. See Gutierrez v. Peters, 111 F.3d 1364, 1371-73 (7th Cir. 1997). The plaintiff has sufficiently alleged that defendants Murphy, Fofana, Foster, Kramer, Roberts, Sable, Lewis, Milner, Anderson, Unknown Nurse, Swartout, Feltz, Wheatley, Hermes, Tannan, Bowens, Halverson and Sparks knew he was suffering from pain, which was exacerbated by the decision to not give him a low tier restriction, and did not address his concerns. These defendants allegedly could have provided the plaintiff a low tier restriction which would have meant that he did not have to use the stairs. The plaintiff alleges these defendants knew that not only was it painful for him to use the stairs, but also that with his ulcerative colitis condition he had trouble reaching the bathroom before soiling himself. The plaintiff also alleges that the defendants failed to give him a low tier

13

restriction after he fell on the stairs and injured himself. The court concludes that the plaintiff has alleged sufficient facts to allow him to proceed on a claim that defendants Murphy, Fofana, Foster, Kramer, Roberts, Sable, Lewis, Milner, Anderson, Unknown Nurse, Swartout, Feltz, Wheatley, Hermes, Tannan, Bowens, Halverson and Sparks acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

The plaintiff also sues four inmate complaint examiners: R. Bubolz, L. Doeling, C. Spranger and T. Gillingham. He states that these defendants had the authority to address his condition and have him placed in a low tier housing unit, but they turned a blind eye to his condition. At this stage, the plaintiff may proceed on his deliberate indifference claim against these grievance officers in their individual capacities. See Perez v. Fenoglio, 792 F.3d 768, 781-82 (7th Cir. 2015).

### 2. Failure to Supervise

On the other hand, the plaintiff may not proceed on "failure to supervise" claims against defendants Sable, Fofana and Foster. Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009); see George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). While the plaintiff may proceed against Sable, Fofana and Foster in their individual capacities on deliberate indifference claims as described in the preceding paragraphs, he may not proceed on failure to supervise claims against these defendants.

### 3. Due Process Claim Against Sarah Felts

The plaintiff alleges that defendant Sarah Felts "destroyed and/or failed to preserve video evidence" of his November 22, 2019 fall down the stairs in violation of his due process rights. Dkt. No. 1 at 10. The plaintiff cites to

14

Lennear v. Wilson, 937 F.3d 257 (4th Cir. 2019) in support of his contention that he states a due process claim against Felts for allegedly not preserving the video of his November 22, 2019 fall. Dkt No. 1 at 10. In Leannear, the court held that the petitioner had a qualified due process right to access and compel consideration of video surveillance evidence of an incident giving rise to his loss of good time credits. Id. at 279. The Leannear case, which relates to the length of the petitioner's confinement, does not apply to the plaintiff's request for preservation of video in this case. The plaintiff has not stated a plausible claim for relief under §1983 based on his allegation. The court will not allow him to proceed on a due process claim against Felts and the court will dismiss her as a defendant.

### 4. *Retaliation Claim Against Defendant Roberts*

The plaintiff alleges that defendant Roberts retaliated against him for filing his December 4, 2019 complaint in Case No. 19-cv-1812 by informing the plaintiff's roommate that "someone very close to you has snitched on you, I hate snitches." According to the plaintiff, Roberts did this the day after the plaintiff arranged to privately discuss his concerns with the unit social worker regarding his roommate's contraband items held in his room.

To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The court issued the screening order in Case No. 19-cv-1812 on April 24, 2020, so Roberts would not have had notice of that case until after the April 7, 2020 date of the alleged incident. In addition, the plaintiff's allegation that Sergeant Roberts made a vague statement to the plaintiff's roommate does not state a plausible retaliation claim against Roberts. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court will not allow the plaintiff to proceed on a First Amendment retaliation claim against Roberts.

### 5. Claims under the ADA and RA

The plaintiff sues the supervisor defendants Sable, Fofana and Foster, as well as special needs committee members Wheatley, Hermes, Tannan, Bowens and Halverson, in their official capacities because he says there appears to be an unwritten policy of denying a person with an obvious disability the proper accommodations, in violation of the Americans with Disabilities Act and the Rehabilitation Act. The plaintiff also names the Wisconsin Department of Corrections as a defendant.

Title II of the Americans with Disabilities Act (ADA) "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. §12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. §12132). Analysis under the Rehabilitation Act (RA), 29 U.S.C. §794, is

essentially the same except that the RA includes an additional element requiring that the entity denying access receive federal funds. See Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 671-72 (7th Cir. 2012); Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical"). To state claim under the RA, a plaintiff must allege that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." Jaros, 684 F.3d at 671-72 (citations omitted).

"[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities—the proper defendant is the organization, or the individual in his or her official capacity. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Like the ADA, the RA has been interpreted to preclude suits against officials in their individual capacities. See Boston v. Dart, No. 14 CV 8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303, 783 F.3d 624, 644 (7th Cir. 2015)).

The term "qualified individual with a disability" means,

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §12102(1)(A). Major life activities include, but are not limited to "caring

for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2)(A). Based on these definitions, the plaintiff's knee and back injuries, and the resulting pain from the injuries, meet the requirement that he is a qualified individual with a disability. See Jaros, 684 F.3d at 672 (plaintiff who had severe hip pain and trouble walking was a qualified individual with a disability under the ADA); see also Everett v. Baldwin, No. 13 C 04697, 2016 WL 8711476, at *8 (N.D. Ill. Jan. 15, 2016) (prisoner who, as a result of knee injury and resulting pain, could not stand upright or walk, and had to crawl up and down stairs and sleep on the floor, was a qualified individual with a disability).

The plaintiff also has sufficiently alleged that his access to programs or activities was denied because of his disability. He alleges that the following activities were impaired by the defendants' refusal to give him a low tier restriction: getting clean clothes, making phone calls, getting medicine, getting water, going to the bathroom, going to health services for treatment, getting mail, eating, brushing his teeth after meals, going outside, going to the library, getting haircuts, and laundry. This states a plausible ADA claim at the pleading stage. See Jaros, 684 F.3d at 672 (incarcerated person stated claim where alleged refusal to accommodate back injury and inability to walk kept incarcerated person from accessing meals and showers on the same basis as other incarcerated persons); Everett, 2016 WL 8711476, at *9 (failure to move incarcerated person to a low bunk and low gallery prevented incarcerated person from accessing meal and showers, both of which were on the ground floor, because he could not navigate the stairs); Johnson v. Godinez, No. 13 CV

2045, 2015 WL 135103, at *2 (N.D. Ill. Jan. 9, 2015) (disabled incarcerated plaintiff's allegations that accommodations at times prevented him from going to meals and stated ADA and RA claims); Boston v. Dart, No. 14 CV 8680, 2015 WL 4638044, at *3 (N.D. Ill. Aug. 4, 2015) (incarcerated person who alleged that he accessed meals and leisure activities on a different basis than other detainees due to his disability stated claim under the ADA and RA).

The plaintiff does not seek injunctive relief in this case, only compensatory and punitive damages. (And he no longer is confined in a Wisconsin Department of Corrections institution.) A plaintiff may recover compensatory damages under the ADA and the RA if the plaintiff can show intentional discrimination. See Phipps v. Sheriff of Cook Cty., 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009); see also Morris v. Kingston, 368 F. App'x 686, 689-90 (7th Cir. 2010).

At this early stage, the plaintiff has stated a claim under the ADA and RA based on the institution's alleged failure to accommodate his disability by providing him a low tier restriction, which impaired his access to prison programs and activities. The plaintiff has sued the Wisconsin Department of Corrections, which is the proper defendant in the ADA/RA claims, and he may proceed against the Department of Corrections on those claims. The plaintiff may not proceed against any defendants in their official capacities on these claims.

### 6.    *Wheelchair Allegations*

The plaintiff alleges that beginning in December 2020, he was denied access to a wheelchair as an alternative for walking long distances. These events allegedly occurred many months after his latest low tier restriction allegations. The plaintiff's allegations related to the denial of a wheelchair do

not belong in this case. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). The plaintiff may not proceed in this case on any claims relating the denial of access to a wheelchair.

        *7.    Summary*

The plaintiff may proceed on a claim that defendants Murphy, Fofana, Foster, Kramer, Roberts, Sable, Lewis, Milner, Anderson, Unknown Nurse, Swartout, Feltz, Wheatley, Hermes, Tannan, Bowens, Halverson, Sparks, Bubolz, Doeling, Spranger and Gillingham acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He also may proceed on claims under the ADA and RA against defendant the Wisconsin Department of Corrections. The court will dismiss all remaining claims and defendants.

After the named defendants respond to the complaint and the court issues a scheduling order, the plaintiff will need to use discovery to identify the Unknown Nurse defendant.

## II.  Conclusion

The court **DISMISSES** defendants Sarah Felts and M. Greenwood.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Murphy, Fofana, Foster, Kramer, Roberts, Sable, Lewis, Milner, Anderson, Swartout, Feltz, Wheatley, Hermes, Tannan, Bowens, Halverson, Sparks, Bubolz, Doeling, Spranger, Gillingham and the Wisconsin Department of Corrections. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

Dated in Milwaukee, Wisconsin, this 27th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**